# JUNE TERM.

## WHEELING.

### STATE *v*. CHISNELL.

Submitted June 2, 1892.—Decided June 11, 1892.

<table>
<tr><td>36</td><td>659</td></tr>
<tr><td>46</td><td>503</td></tr>
<tr><td>36</td><td>659</td></tr>
<tr><td>49</td><td>694</td></tr>
<tr><td>49</td><td>719</td></tr>
<tr><td>36</td><td>659</td></tr>
<tr><td>e56</td><td>219</td></tr>
<tr><td>36</td><td>659</td></tr>
<tr><td>f66</td><td>199</td></tr>
</table>

1. INTOXICATING LIQUORS—INDICTMENT.
    An indictment for selling liquors in violation of section 1, c. 32, Code 1891, is good, though it does not name the purchaser.

2. INTOXICATING LIQUORS—INDICTMENT—EVIDENCE.
    Under such indictment of one count by giving evidence tending to show one sale, the State has not made a final election to rely on that sale which will preclude it from proving another to sustain its indictment; and it is not error for the court, in its discretion, to allow evidence of another sale.

3. INTOXICATING LIQUORS—INDICTMENT—EVIDENCE.
    When, in such case, evidence of more than one sale is given,

on the request of defendants, at the close of the State's evidence, the court should compel the State to elect the particular sale on which it will rely for conviction, and then exclude evidence of other sales.

4. INTOXICATING LIQUORS—INDICTMENT—EVIDENCE.

Where, in such case, there is evidence before the jury tending to prove two different sales, it is error for the court to instruct the jury, against objection, that if either sale is proven it should convict.

5. NEW TRIAL—REMARKS OF COUNSEL.

The prosecuting attorney, in argument before the jury, alludes to the failure of the accused to testify in his own behalf, but on exception he withdraws, and asks the jury not to consider, his remarks in that respect, and the court declares the remarks improper, and directs the jury to disregard and not consider them. This is no ground for new trial.

*J. J. Jacob* and *L. S. Jordan* for plaintiff in error cited 138 Mass. 498; 2 Greenl. Ev. § 86; 5 Mich. 305; 1 Den. 574; 43 Ind. 38; 27 Ohio St. 563; 12 Ind. 18; 22 W. Va. 800.

Attorney-General *Alfred Caldwell*, for the State cited the following authorities:

1—*On Admission of evidence tending to prove more than one sale.*

20 W. Va. 672; 2 Va. Cas. 26; 1 Gratt. 553; 31 W. Va. 162; 26 W. Va. 153; 22 Vt. 74; 57 Ind. 76; 60 N. Y. 559; 23 Vt. 14; 57 Vt. 637; 58 Hun. 607; 2 Whar. Cr. Law (8th Ed.) § 1525; Whar. Cr. Ev. § 104; 4 Den. 235; 113 Ind. 26; 9 Lea 373; 72 Wis. 7; 55 Mich. 586; 31 Kan. 376; 34 Kan. 582; 40 Kan. 87; 1 Gray 463; 109 Mass. 349; 35 Ala. 351; 94 Ill. 37; 5 Mich. 305.

2—*On remarks of prosecuting attorney as ground for new trial.*

Code, c. 152, s. 19; 22 W. Va. 815; 18 Ohio St. 366; 31 Kan. 357; 77 Mo. 274; 110 Mass. 411; 114 Mass. 285; 123 Mass. 241; 141 Mass. 58; 56 Ind. 185; 77 Va. 395; 14 Gratt. 613; 22 Gratt. 924; 25 Gratt. 905; Whar. Cr. Pl. & Pr. (8th Ed.) § 577; Thorns Trials §§ 1001–1003 and notes.

BRANNON, JUDGE:

In 1890, in the Circuit Court of Ohio county, Julia Chis-

nell was convicted and fined for selling beer without license, and she asks reversal of the judgment on several grounds.

The first ground is that after the State had given evidence to show a sale to one Zigenfelder, it was allowed to show before the jury another and different sale to one Arnett, and that the court told the jury it might convict on either sale, if proven. The contention is, that when once the State has given evidence for the purpose of showing a particular sale, it has made its election of the transaction or sale on which it will rest its case, and can not give evidence of another and different sale, the indictment containing only one count.

The indictment is general, charging no particular sale, naming no person as the purchaser; and I think it is allowable for the State to offer evidence of different sales under such indictment; or rather, the fact, that the State has given evidence tending to show one sale, does not irrevocably bind it as by a final election, and preclude it from proving another sale. The evidence as to a particular sale may turn out to be inadequate; and the indictment not charging any particular sale, why may not the State turn to another sale, and upon it ask conviction? Why may it not have recourse to any number of sales until it secure a sale sustained by sufficient evidence to warrant conviction?

If the indictment charged a particular sale, the State would be tied down to that, but not where the indictment is general. And even if the indictment charged a sale to a particular person, I think the State could, after giving evidence tending to show one sale to him, give evidence tending to show another to him. To hold that giving evidence to prove one sale is a final election, precluding evidence of another sale, would be to hold that, when the prosecution's evidence as to that sale is deficient, it must lose its case, though full-handed with proof of another sale. There are decisions in Alabama, and perhaps other States, holding this theory of election; but the current of authority is otherwise, as shown in note 4 to section 461 of 1 Bish. Crim. Proc.

But notwithstanding several sales may be given in evi-

dence, yet do all of them remain before the jury to the end, for their consideration in reaching a verdict, or should the State be required to choose the particular one on which it will ask a conviction?

The indictment not naming the purchaser gives the defendant no notice of what particular sale is charged against him. He knows this, perhaps, first when the State has proven its case, and then must set about his defence. Hard as this may seem, it is allowable under authorities holding good an indictment charging unlawful sale in a general way without naming the purchaser; and therefore it may be said that, if this be so, a parity of reasoning would justify the practice of allowing the jury to consider evidence relating to two or an indefinite number of sales. This would be very oppressive and hurtful to the defendant. Not until the close of the State's evidence of the sales, in many instances numerous, does he know what sales are imputed to him, and he must at once seek evidence from this quarter and that to repel the case made by the prosecution, and often, for want of time, it is utterly out of his power to furnish such evidence. It is hard enough to allow an indictment wanting that element of certainty most valuable to the defendant as notice of what sale he is called upon to meet, without springing upon him numerous sales, and working serious surprise to the defendant.

There is also this grave objection to permitting evidence of several sales to be considered by the jury: part of the jury may think the evidence of one sale sufficient for conviction, while other jurors think it not sufficient, but thinking another sale fully proven the entire jury unite in the opinion that the defendant is at any rate guilty of a violation of law, when in fact the entire jury is not agreed that the defendant is guilty of one particular unlawful sale; and so really the defendant has not been lawfully convicted by the concurring judgment of twelve jurors of one and the same single offence. He has been indicted for one offence, tried for many, and convicted of one, but of which one of the many we can not say. True, we can hardly presume that the jury would be so careless as to return a verdict without the agreement of all upon the same sale; but it is a

danger which would exist under such a practice, which danger is removed by enforcing election.

It is argued that this same danger exists where there are several counts ; but in such case the compulsory election of a number of sales correspondent with the number of counts should be enforced ; and besides, there can be no reason for objection to proof of divers sales under divers counts for such sales. The ordinary rules of evidence allow evidence of different sales under several counts.

I am of opinion that in such a case as this, where the State has given evidence tending to show different sales, yet at the close of its evidence, before the defendant opens his defence, the State should be required to elect the particular sale on which it will ask a verdict ; and then all evidence relating to other sales should be excluded.

Wharton, in 2 Crim. Law, § 1525, speaking of illicit sales of liquors, says : "It is erroneous to admit evidence of a greater number of offences than there are counts, unless to prove *scienter* or *quo animo*. And the court when several sales are introduced, will compel the prosecution to elect as to the sales on which it relies." Whart. Crim. Ev. § 104.

I regard the rule as properly laid down by the Kansas court, in *State* v. *Schweiter*, 27 Kan. 512, that the court may, in its discretion, permit the prosecutor, after offering evidence of a particular offence, to offer also evidence tending to prove several other distinct, substantive offences, yet the court should, on motion, after all the evidence of a number of distinct offences has been introduced, require the prosecutor, before the defendant is put on his defence, to elect upon what particular transaction he will rely for conviction. This doctrine is sustained by the eminent law author, Bishop, in 1 Crim. Proc. §§ 460–462, and note 4 to section 460, and by *State* v. *Croteau*, 23 Vt, 14 ; *State* v. *Smith*, 22 Vt. 74 ; *Com.* v. *O'Connor*, 107 Mass. 219 ; *State* v. *Czarnikow*, 20 Ark. 160 ; *Stockwell* v. *State*, 27 Ohio 563 ; *Lebkobitz* v. *State*, 113 Ind. 26 (14 N. E. Rep. 363, 597) ; *Boldt* v. *State* 72 Wis. 15 (38 N. W. Rep. 177) ; *Long v. State*, 56 Ind. 182.

The defendant did not in this case move that the State should elect the sale on which it would stake its case, but she objected to evidence of another sale ; and this, it seems

to me, called upon the court to give her the benefit of that objection by the only proper order which could give her its benefit, that is, by ordering the prosecuting attorney to make such election.

Moreover, the court instructed the jury that if a sale was made to either Zigenfelder or Arnett, it must convict the accused, thus expressly telling the jury to consider both sales, whereas it should have refused such instruction and compelled the prosecutor to so elect. A similar instruction was held bad in *Boldt* v. *State*, 72 Wis. 7 (38 N. W. Rep. 177) and in *Com.* v. *Patterson*, 138 Mass. 498.

It is contended that as the law holds good an indictment for selling liquors under section 1, c. 32, of the Code, though it do not name the purchaser, and a sale to any one may be proven, it follows that under such an indictment any number of sales may be proven. The authorities in different States conflict as to the necessity of naming the purchaser in the indictment. 2 Bish. Crim. Proc. § 548; Bish. St. Crimes, § 1037. Were it an open question in this State, I should think that the principles of pleading would require that most important feature of the indictment by which to make certain the offence charged, the name of the purchaser, to be given.

The reason given for a departure, in this instance, from the usual rule, requiring the act to be specified with legal certainty, is that selling liquors is different from that class of offences where the act is an injury to third persons, as murder, larceny, etc., in which the name of the person injured must be given, when known, but that in liquor-selling no particular person is injured. I conceive, however, that this distinction is immaterial or unimportant, and that it is really a question touching the essential right of the defendant in the prosecution—his right to be informed by the indictment of the particular sale alleged to be unlawful.

But it is not an open question in this State, for authorities binding us allow such an indictment. *Dove's Case* 2 Va. Cas. 26; *Hulstead's Case*, 5 Leigh, 724; *Smith's Case*, 1 Gratt. 553; *Pendergast's Case*, 20 W. Va. 672; *Loftus's Case*, 3 Gratt. 631. Though this is so, it relates only to the pleading, not to the evidence, and does not alter the long-stand-

ing rule that under one count but one offence can be proven.

This indictment is for but one offence; but one penalty can be imposed under it. Why should the omission of the name of the purchaser make it an exception to the general rule, that under an indictment of one count but one offence can be proven, and the rule that, where several offences have been offered in evidence, the prosecution must elect the particular one on which it will rely? It is argued that it would be illogical to require the indictment to contain several similar counts, only to prove more than one offence. The answer is based on old rules of evidence, that where there is but one count but one offence can be proven; where there are several counts, several offences may be proven. These rules are fundamental and established; they are unchanged. See *Lebkovitz* v. *State*, 113 Ind. 27 (14 N. E. Rep. 363, 597).

Another ground assigned for the reversal of the judgment is that in his argument before the jury the prosecuting attorney said: "They ask you to acquit this woman, who is sitting here with her brazen face, and not saying anything, or offering any defence;" and that this is in violation of section 19, c. 152 of the Code, which, after providing that in any prosecution for crime the accused, at his request, shall be a competent witness, concludes: "But a failure to make such request shall not create any presumption against him or her, nor shall any reference be made to nor comment upon such failure by any one during the progress of the trial in hearing of the jury." Counsel for the defendant, when the above quoted language was used by the prosecuting attorney at once excepted to it, and the prosecuting attorney withdrew it and asked that it be not considered by the jury, and the court said the language was not proper and excluded it from the jury.

The clause of the statute above quoted has been twice referred to in decisions of this Court. In *State* v. *Ice*, 34 W. Va. 244 (12 S. E. Rep. 695) it was not considered to apply. In *State* v. *Greer*, 22 W. V. 800, it was not considered clear that the remarks of the attorney referred to the prisoner's failure to testify, and the case decides nothing as to the con-

84

struction of the statute, the judge delivering the opinion declining to decide whether comment on the failure of an accused to testify would be cause for reversal, and admonishing attorneys for the State to be careful not to make any such comment, stating that it might be that a verdict would have to be set aside for that reason, although the court should direct the jury to disregard such comment.

Question might be made in this case whether the language used by the prosecuting attorney referred at all to the omission of the defendant to testify, and whether it did not refer simply to her failure to produce any evidence. But perhaps the words, "not saying anything" would be construed as referring to her failure to testify; and thus, for the first time in this Court, fairly arises the question of the effect of comment by the State's counsel upon the refusal of a defendant, on trial for an offence, to testify.

The design of the statute was to abolish the common-law rule of evidence forbidding a person accused of crime to testify, and to render him a competent witness if he requested to be examined; and as it was a privilege extended to him, he might decline its use, and lest his omission to testify should be considered by the jury as evidence of guilt, or comment be made by counsel upon it, the legislature declared that his failure to use the privilege should not create any presumption against him, and that no reference to or comment upon the fact should be made in the presence of the jury.

But the statute, having gone thus far, stops, and does not say that a violation of it shall set aside the verdict. While mandatory in a sense, in the sense that it directs and ought to be obeyed, yet it is not imperative and mandatory in the sense that every departure from it will overthrow a verdict; in other words, it is a directory statute, and it is left to the courts to say, upon the circumstances of the case, whether such harm has been done to the accused as to call for a new trial, as in the case of other matters alleged for errors. All agree that it is improper for the State's attorney to make any such reference or comment as the statute forbids; but when he does so, it then becomes a question whether it shall avoid the verdict; and that de-

pends upon all the circumstances of the case. A misstep of this kind has nothing in it so peculiar, singular, or magical as to set aside a trial necessarily and under all circumstances. It does not so widely differ from other mistakes occurring in trials. The statute does not say or indicate that it shall have such inevitable and potent effect.

After the hasty language had been used in the case before us, the prosecuting attorney and court at once did their full duty, all that was then in their power, by withdrawing the language, and directing the jury to discard it from the case. Are we to say that the jury had not the intelligence to eliminate it from the case, and decide it without regard to that language? Can we say the prisoner was harmed by the occurrence under these circumstances? Often evidence is offered and refused in the presence of the jury, and often it is fully heard by the jury, and then excluded; and this is not ground for reversal.

It seems to be held that if such comment upon the failure of the accused to testify is made, without any action by the court or attorney to nullify or neutralize it, it will be ground for annulling the trial, unless waived. Thomp, Trials, § 1001; *State* v. *Banks*, 78 Me. 490 (7 Atl. Rep. 269); *Crandall* v. *People*, 2 Lans. 309; *Long* v. *State*, 56 Ind. 182; *Knight* v. *State*, 70 Ind. 375; *Com.* v. *Scott*, 123 Mass. 239; *State* v. *Martin*, 74 Mo. 547; *Com.* v. *Harlow*, 110 Mass. 411; *State* .v. *Tennison*, 42 Kan. 330 (22 Pac. Rep. 429); *People* v. *Rose*, 4 N. Y. Supp 787; *Hunt* v. *State*, 28 Tex. App. 149 (12 S. W. Rep. 737); *State* v. *Moxley*, 102 Mo. 374 (14 S. W. Rep. 969, and 15 S. W. Rep. 556); *People* v. *Brown*, 53 Cal. 66; Whart. Crim. Ev. § 435; 1 Bish. Crim. Proc. § 1186.

But where the court corrects the error by excluding the comment and admonishing the jury to disregard it, the authorities fairly sustain the proposition that it will not be ground for setting the verdict aside. *Crandall* v. *People, supra;* opinion in *Com.* v. *Harlow, supra; State* v. *Graham,* (Iowa) 17 N. W. Rep. 192; *People* v. *Rose, supra.*

In *Calkins* v. *State*, 18 Ohio St. 366, the court said: "We suppose a case might occur, in which the misconduct of counsel for the State in disregarding the prohibition

of the statute, and of the court in permitting such disregard, or in failing promptly to rebuke and arrest it by the exercise of all its authority and power necessary for that purpose, would require the court, in the exercise of a just discretion, out of regard to the rights of the prisoner, to award a new trial. But in this case the prisoner seems to have provoked the single hasty retort of counsel, and the court does not appear to have been in any way wanting in duty." The syllabus gives the fact that it did not appear that the court was wanting in duty, as the reason for refusing a new trial.

In *Com.* v. *Worcester*, 141 Mass. 58 (6 N. E. Rep. 700) the attorney referred to the fact that the defendant did not testify, saying that there were facts he might have given or explained, adding, however, that there could be no inference against him from the fact that he did not testify. The defendant's counsel objected to this, and after the conclusion of the argument asked the judge to take the case from the jury because of such remarks by the State's counsel, which he refused to do. The Supreme Court said the defendant's remedy against such remarks was to ask the judge to instruct the jury that they should not be considered by the jury to his prejudice, and that the court did right in refusing to take the case from the jury.

The case of *People* v. *Hess*, 85 Mich. 128 (48 N. W. Rep. 181) is just like this case in the feature that the attorney sought to correct his error, and the court charged the jury to disregard his remarks. The court said: "Thus all was done that could be done to cure this error of the city attorney, and we do not think the case is such that it calls for reversal, because of Mr. Casgrain's remarks, though highly improper and violative of the statute; and which, standing alone, without the subsequent action of Mr. Casgrain and the court, would have been sufficient cause for setting aside the verdict."

In Vermont, in *State* v. *Cameron*, 40 Vt. 555, it was held that the failure of the court, on request, to prevent the prosecuting attorney from arguing to the jury that the omission of the defendant to testify was evidence against him, was cause for a new trial, but the opinion states that, if the court had done so, it would be different.

The case of *Ruloff* v. *People*, 45 N. Y. 213, is a strong case to support our ruling on this point. There the judge, in charging the jury in a murder case, twice referred to the fact that the prisoner did not appear as a witness, once very materially in reference to the circumstances claimed to be suspicious as tending to prove the presence of the prisoner at the burglary, and his connection with other burglars, in a manner calculated to give an impression prejudicial to the prisoner. Afterwards, on exception being made, he corrected his language, saying that no law required the prisoner to be sworn, and no inference was to be drawn against him from his failure to be sworn ; and it was held that this cured the error.

In *Angelo* v. *People*, 96 Ill. 200, and *Quinn* v. *People*, 123 Ill. 333 (15 N. E. Rep. 46) such reference was held fatal, notwithstanding the court condemned the reference, and told the jury to disregard it ; the court saying that, after the jury had once heard the remarks, its effect could not be removed from their minds by the charge of the court. It seems to me that this reason is inadequate ; that the same may be said of many other occurences during trials ; and that it impeaches the intelligence of juries, and the capacity of the human mind to discard foreign elements in reaching its conclusions.

The cases of *Long* v. *State*, 56 Ind. 182, and *Showalter* v. *State*, 84 Ind. 562, hold also that such reference by the prosecuting attorney calls for a new trial, notwithstanding the instruction of the court that the jury is to disregard it. But in the later case in Indiana of *Coleman* v. *State*, 111 Ind. 563 (13 N. E. Rep. 100) though the court does not in terms express dissatisfaction with those cases, yet it logically antagonizes them in holding that such remarks or comments would not be cause of reversal, placing it on the ground that the accused, though he objected and excepted to the remarks as soon as made, yet went on to the close of the trial and then asked a new trial, instead of at once arresting the trial.

It seems to me that this is an insufficient reason for refusing a new trial, if the court had been disposed to follow the former decisions. The court used language potent to show that the former decisions were not tenable, saying :

"In this case the court promptly sustained the appellant's objection, and such reparation as could be was made on the spot, the court denying nothing which the appellant asked in that connection, and the question remains, did the conduct of the prosecutor constitute an error so radical and incurable that it was not, and could not be, waived by the defendant by proceeding, without further objection or motion, to an adverse ending of the trial? To affirm this proposition would put it in the power of a defendant to compel a second trial, at his election, whenever a prosecutor at any stage, by inadvertence or otherwise, violated the spirit of the statute under consideration; and this, too, notwithstanding the trial court may have done its utmost to rectify the mistake, and may have made no ruling or decision in that connection adverse to the defendant, or to which he took any exception."

The opinion proceeds to say that no princple allows a defendant, in case of misconduct by any one which would call for a new trial, to go on and take his chances for acquittal and hold that in reserve in case the verdict be against him, and adds:

"Misconduct on the part of the prosecutor is not different from misconduct of a juror or other person connected with the trial. It is a settled rule that a person having knowledge of the misconduct or incompetency of a juror, or other matter not affecting the jurisdiction, which would vitiate the trial, who proceeds to a conclusion, without objection, will not afterwards be heard to object that the trial was vitiated thereby."

It seems to me—*First*, that this reasoning is strong to show that the former decisions in Indiana are not tenable; and, *second*, if the doctrine of waiver on the part of the defendant by going on with the trial be correct, it would be an additional reason for refusing a new trial on this ground in the present case, as the defendant made no motion to arrest the trial on that score.

The Texas court, in *Hunt* v. *State*, 28 Tex. App. 149 (12 S. W. Rep. 737) holds with the Indiana court in *Long* v. *State, supra.*

Thus, upon a review of the authorities, we do not re-

gard the remarks of the prosecuting attorney, under the circumstances, ground for new trial. But while so holding, I deem it proper to repeat the injunction made years ago by Judge Johnson in *Greer's Case,* and made in strong language also in almost every State where the courts of last resort have had the subject under consideration, that prosecuting attorneys should be watchful and careful to make no allusion whatever, directly or indirectly, to the omission of a party on trial for crime to testify. Under the benignity and mercy of our law he has a right to be silent, and to call on the prosecution to prove him to be guilty. Often, indeed generally, it is the best policy for him to remain silent, even if innocent, and the exercise of this sacred privilege should by no means be even faintly alluded to, to his prejudice.

Whatever may be thought of Dr. Thompson's criticism, in his work on Trials, volume 1, § 1003, on that clause of the statute declaring that a prisoner's failure to testify shall create no presumption against him, nor be commented upon, such is the command of the legislature.

The judgment is reversed, the verdict set aside, a new trial allowed, and the case remanded.

REVERSED.    REMANDED.