# Richmond

## CHARLIE WILSON v. COMMONWEALTH.

January 14, 1932.

Present, Campbell, C. J., and Holt, Hudgins and Browning, JJ.

The opinion states the case.

*Q. C. Davis, Jr.*, and *Jas. G. Martin*, for the plaintiff in error.

*John R. Saunders, Attorney-General*, and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The accused, Charlie Wilson, was indicted for the malicious wounding of C. E. Keeter. The first bill of exceptions sets forth the result of the trial as follows:

"And having heard the foregoing evidence and the instructions of the court, and argument of counsel, the jury returned the verdict of guilty against the defendant, and fixed the punishment at five years in the penitentiary, with a recommendation that three and one-half years thereof be suspended."

Treating, no doubt, as surplusage the recommendation for a three and one-half years' suspension of the punishment, the trial court sentenced the accused to the penitentiary for the period of five years. The record fails to show any discussion of the form of the verdict as indicated by the bill of exception. The order, however, does show that the verdict was in proper form, but there is no indication that the jury would have imposed a punishment of five years in the penitentiary had they been advised that the court was without warrant of law to suspend a part of the sentence.

The facts are that Wilson, the husband of Mrs. Bessie Wilson and stepfather of Virginia Whitcombe, a girl sixteen years of age, was an employee of the Norfolk Southern Railway Company in the city of Norfolk. Keeter, a married man and the father of two children, was paying marked attention to· the daughter, without having informed her of his marital state. When Wilson ascertained that Keeter was married, he forbade his visiting in the home. On Thanksgiving, 1929, an altercation arose between Wilson and Keeter, a knife was drawn by Wilson, but there was no actual combat. Following this episode, Mrs. Wilson and the daughter left the home of Wilson, for the alleged reason that Wilson had committed an assault and battery upon the wife. Immediately thereafter Keeter became a boarder in the then home of Mrs. Wilson. The record shows that the domestic relations of the Wilsons were far from happy, and during the period of separation Mrs. Wilson instituted a suit for divorce, which was pending at the date of the trial.

On the 25th day of April, 1930, the day of the wounding, Keeter, Mrs. Wilson and the daughter were driving in an automobile along the streets of Norfolk, on their way to visit ·the mother of Mrs. Wilson. As divulged by the testimony of Keeter and Miss Whitcombe, they passed Wilson who was driving a Ford car, and immediately, without warning, he fired three or four pistol shots at them, one of the shots taking effect in Keeter's left arm. Wilson claims that as Keeter drove past him he (Keeter) pointed a pistol at him and that he (Wilson) shot in reasonable apprehension of bodily harm, and thus, in self-defense. Keeter, Miss Whitcombe and Wilson were the only witnesses who testified in regard to the main transaction.

■ Under the well recognized rule prevailing in this State, that it is the peculiar province of a jury to pass upon the conflict of evidence, it is conceded by counsel for the

accused that the evidence adduced by the Commonwealth supports the verdict, and no error is assigned for the refusal of the court to set aside the verdict on the ground that it is contrary to the evidence.

The errors assigned are:

"1. The court erred in not setting aside the verdict because the Commonwealth's attorney illegally called the defendant's wife as a witness for the Commonwealth.

"2. The court erred in not setting aside the verdict because the Commonwealth's attorney, in his closing argument to the jury, illegally commented on the failure of the wife to testify."

"3. The court erred in not setting aside the verdict and discharging defendant because the defendant did not have a speedy trial, as required by the Constitution, and more than four terms of court passed before his sentence."

The first two assignments of error involve a construction of section 6211 of the Code. In the inception of the trial, while Keeter was testifying as a witness, he made the statement: "Mrs. Wilson says to me, 'he is going to shoot at you.'" Counsel for the accused moved the court to strike out the statement on the ground that it was in violation of the statute, which motion the court sustained. Upon the conclusion of the testimony of Keeter and Miss Whitcombe, the attorney for the Commonwealth *called* as a witness for the prosecution Mrs. Wilson, the wife of the accused, who apparently stood ready to testify. On motion of counsel, the court ruled that she was an incompetent witness. In the face of the ruling of the court that the statement of Mrs. Wilson, as quoted by Keeter, was not admissible; that she would not be permitted to testify as a Commonwealth's witness against her husband, the attorney for the Commonwealth, in his closing argument, made this statement:

"There were three persons, including the man who was

shot, in the automobile with him, and that two of those persons had testified for the prosecution, but that the third person in the automobile was prevented from testifying by a legal technicality."

What then transpired is shown by bill of exceptions No. 2:

"Immediately upon the retirement of the jury, counsel for the defendant objected and excepted to said statement of the Commonwealth's attorney on the ground that it was improper and contrary to the express provision of the Virginia statute, which provided that the failure of a wife to testify should not be commented upon by the prosecuting attorney.

"The court said: 'Do you want to make a motion for a mistrial?' Counsel for the defendant said. 'We do not have to make a motion for mistrial under the *Eley Case.*'

"After staying out for some time the jury came back into court to ask the court a question, and after answering the question, the court stated to the jury that the jury should disregard the statement made by the Commonwealth's attorney to the effect that the reference to testimony of third person which was intended for defendant's wife had been prevented from testifying by a legal technicality. And struck it from the record.

"Counsel for the defendant again objected and excepted and stated to the court that this statement of the court could not correct the situation and that making statements in the presence of the jury on the subject emphasized the matter, and that the matter could not be cured by anything that the court would say."

Section 6211 of the Code reads thus:

"In criminal cases husband and wife shall be allowed, and subject to the rules of evidence governing other witnesses may be compelled, to testify in behalf of each other, but neither shall be compelled, nor without the consent of the other allowed, to be called as a witness against the other

except in the case of a prosecution for an offense committed by one against the other, but if either be called and examined in any case as a witness in behalf of the other, the one so examined shall be deemed competent, and subject to the exception stated in the next section may be compelled, to testify against the other under the same rules of evidence governing other witnesses. The failure of either husband or wife to testify, however, shall create no presumption against the accused, nor be the subject of any comment before the court or jury by the prosecuting attorney. In the prosecution for a criminal offense committed by one against the other, each shall be a competent witness except as to privileged communications."

It is to be observed that the language of the statute has no reference whatever to the *introduction* of the wife as a witness against her husband in a criminal case. The plain terms of the statute forestall any such idea. In unequivocal language the legislature has said that in no case, except for an offense committed by the husband against the wife, shall she be "allowed to be called as a witness" against her husband without his consent. The language employed shows the plain intent of the legislature to place upon the Commonwealth the burden of first obtaining the consent of the accused husband before it will be allowed to call the wife as a witness against him. The evil which the legislature sought to correct is exemplified in the case at bar, viz: The intentional effort of the attorney for the Commonwealth to force the accused to object to the introduction of his wife as a witness against him, and thus, perhaps, have the jury place upon him the odium of seeking to prevent a fair investigation of the transaction. An accused should not, by wilful act, be placed in such an attitude before the jury by the representative of the Commonwealth whose duty to prosecute one accused of crime is coexistent with his duty to see that the accused is accorded a fair and impartial trial.

In this connection we will advert to the second assignment of error. We are unable to concur in the view of the attorney for the Commonwealth, that Mrs. Wilson was prevented from testifying "by a legal technicality." In our opinion she was an incompetent witness by reason of a valid legislative enactment. That the language of the attorney for the Commonwealth violated both the spirit and letter of the statute is conceded by the trial court in a written opinion filed with the record, but the court bases its refusal to set aside the verdict on the ground that the accused waived his right on that score when "he declined to make a motion for a mistrial on the suggestion of the court."

In view of the recent decision of this court in *Spencer* v. *Commonwealth*, 143 Va. 531, 129 S. E. 351, 352, which is relied on by counsel for the accused, we feel compelled to hold that the accused did not surrender his right to make a motion for a new trial, although he failed to take advantage of the court's suggestion. In that case the accused was charged with rape. In the course of his argument the assistant to the attorney for the Commonwealth indulged in remarks of a most inflammatory nature. This court, however, refused to reverse the case, assigning as its reason that the guilt of the accused was so conclusively shown that the remarks of counsel could not have prejudiced the jury. In the opinion, the court, in passing upon the assignment of error, used this broad language: "The objection and exception were to the language used, without further motion of any kind. The proper procedure would have been to move the court to set aside the verdict of the jury and grant the prisoner a new trial, or to discharge the jury and grant the prisoner a new trial."

While we are of opinion that counsel for the accused, with that pronouncement of this court before him, was warranted in exercising his option to move for a new

trial, we are further of opinion, upon more mature reflection, that the rule should be modified. That a prisoner can waive rights which are mere incidents of the trial cannot be questioned. *Kibler's Case*, 94 Va. 804, 26 S. E. 858. That he should be compelled to exercise his legal rights at a time when justice and orderly procedure demand it is also beyond dispute. An accused should not be permitted to stand mute when fairness to the Commonwealth demands that he should speak. He has obtained all to which he is entitled when, upon his arraignment, the Commonwealth throws around him the presumption of innocence, and later accords him a fair and impartial trial by a jury of his peers. When of opinion that the wilful misconduct of the representative of the Commonwealth has prejudiced the jury against him, his remedy is to immediately move the court to discharge the jury and grant him a new trial. Otherwise, it "would put it in the power of a defendant to compel a second trial, at his election, whenever a prosecutor at any stage, by inadvertence or otherwise, violated the spirit of the statute under consideration; and this, too, notwithstanding the trial court may have done its utmost to rectify the mistake, and may have made no ruling or decision in that connection adverse to the defendant or to which he took any exception. * * * Misconduct on the part of the prosecutor is not different from misconduct of a juror or other person connected with the trial. It is a settled rule that a person having knowledge of the misconduct or incompetency of a juror, or other matter not affecting the jurisdiction, which would vitiate the trial, who proceeds to a conclusion without objection, will not afterwards be heard to object that the trial was vitiated thereby." *Coleman* v. *State*, 111 Ind. 563, 13 N. E. 100, 101, cited in *State* v. *Chisnell*, 36 W. Va. 659, 15 S. E. 412.

To the extent that the *Spencer Case, supra,* holds that wilful misconduct on the part of the attorney for the

Commonwealth can be taken advantage of by a motion to set aside the verdict of the jury, it is hereby overruled.

The third assignment of error is ruled by the case of *Butts* v. *Commonwealth*, 145 Va. 800, 133 S. E. 764, and is without merit.

Our conclusion is that the conduct of the attorney for the Commonwealth constitutes reversible error, and for that reason the judgment of the trial court will be reversed and the case remanded for a new trial.

*Reversed.*