## Richmond

GROVER C. BROWN v. COMMONWEALTH OF VIRGINIA.

January 15, 1968.

Record No. 6695.

Present, All the Justices.

*Samuel Goldblatt; Lester E. Schlitz* for plaintiff in error.

*M. Harris Parker, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

EGGLESTON, C.J., delivered the opinion of the court.

On November 22, 1965, upon the complaint of his wife, a warrant was issued charging Grover C. Brown with unlawfully and feloniously committing fornication with his daughter, Bonnie D. Brown, in violation of Code § 18.1-191 [Repl. Vol. 1960].[1] After a preliminary hearing the case was sent on to the grand jury which found an indictment charging him with that offense. Upon arraignment in the trial court the defendant pleaded not guilty and was tried by a jury which found him guilty and fixed his punishment at confinement in the penitentiary for ten years. The defendant's motion for a new trial was overruled and judgment entered on the verdict. We granted the defendant a writ of error.

On appeal the defendant contends that (1) the evidence is insufficient to support the verdict; (2) the trial court erred "in failing to grant a mistrial when the Commonwealth called the defendant's wife to the stand;" (3) the court erred in admitting certain evidence over the objection of the defendant; and (4) the court erred in failing to grant a mistrial because of the improper argument of the attorney for the Commonwealth before the jury.

In November, 1965 the defendant Brown, his wife and four daughters lived on Bruce Place in the city of Portsmouth. The eldest of the daughters was Bonnie, who became twenty-one years of age on August 12, 1965. Bonnie testified that on Sunday, November 21 of that year, she and her six-year-old sister went with their father to Camp Civitan on a service call. After the service call, which lasted about two hours, the father took the other daughter home and asked her (Bonnie) to go with him to his business office, which she did. He told his wife that they were going to the shop and "do some work on the books." At that time Bonnie was doing clerical work for her father who operated a heating and air-conditioning business in Portsmouth. The place of business consisted of an office in the front and a workroom in the rear. She further testified that upon their

---

[1] "§ 18.1-191. *Adultery and fornication by persons forbidden to marry; incest.—* If any person commit adultery or fornication with any person whom he or she is forbidden by law to marry, such person shall be guilty of a misdemeanor; provided, however, that if such person commit adultery or fornication with his daughter or granddaughter, or with her son or grandson, or her father or his mother, such person shall be punished by confinement in the penitentiary for not less than one nor more than ten years, or, in the discretion of the jury or the court trying the case without a jury, by confinement in jail for not more than twelve months and by a fine of not more than one thousand dollars, either or both."

arrival at the shop, between 1:00 and 3:00 P. M., her father took her into the workroom and had sexual intercourse with her on a worktable. She did not protest or object to such intercourse but did so voluntarily, because, she said, from past experience "I knew that I had to * * * or something would happen to me."

Over the objection of the defendant, Bonnie further testified that her father had been having sexual intercourse with her since she was twelve years old and that this continued until November 21, 1965. When asked, "[D]id any condition ever arise as a result of this relationship between you and your father?" she replied, "Yes, I had a baby" in 1962. During this relationship with her father she said that he forbade her having "dates" with young men.

On cross-examination Bonnie admitted that not until November 22, the day following the last act of intercourse did she tell her mother of the relations between her and her father. She said that she had refrained from making this disclosure because of the "threats that my father had made to me." Nor did she make a disclosure of such relations to her grandmother or other relatives or friends, some of whom lived nearby.

Immediately after the incident on November 21, she told her father that she wanted to leave home and go to live with a friend in Richmond, to which he at that time agreed. But on the next day, when she again discussed with him in the presence of her mother the subject of leaving home, he objected, became very angry and slapped her in the face, knocking her glasses across the floor. He struck her, she said, "repeatedly" and "brutally." The mother intervened and told the defendant that if Bonnie left home she (the mother) would go with her. Following this altercation on November 22, Bonnie swore out a warrant against her father charging him with assault. On the same day the defendant's wife swore out the warrant charging him with incest with his daughter.

Bonnie's mother, the wife of the defendant, was called as a witness for the prosecutrix but on objection of the defendant was not permitted to testify. More of this later.

The defendant, testifying in his own behalf, said that he was forty-four years of age and for several years had conducted a heating and air-conditioning business in the city of Portsmouth. He said that on November 21, 1965 he took Bonnie and her sister with him on a service call to Camp Civitan which was completed about 3:30 P.M. He denied having taken Bonnie to his place of business on that day and having sexual relations with her there. He further denied that he

had previously had sexual relations with her. He knew that she had given birth to a child "in a home" when she was about eighteen years of age, but made no charge that this was the result of her relations with any other man. He denied having restrained Bonnie in any way from going with young men or having threatened her because she had done so. He admitted having had an altercation on November 22 with Bonnie and her mother about Bonnie's leaving home. During that altercation, he said, Bonnie called him "a dirty bastard" and in resentment therefor he struck her a single time with his hand. He denied that he brutally and repeatedly struck her, as she testified. He testified that because of the incidents which have been related he was no longer living with his wife and daughters but was residing with his mother.

Several witnesses testified that the defendant had a good reputation for truth and veracity in the community.

We think the sufficiency of the evidence to sustain the verdict and judgment was a question for the jury. They have accepted the testimony of the prosecutrix which, if true, shows that her father committed fornication with her in violation of the statute. Code § 18.1-191.

The trial court instructed the jury that if they believed from the evidence that the prosecutrix "voluntarily participated in the offense charged to the defendant * * * she thereby became an accomplice" and that if an accomplice her testimony "ought to be received with great caution by the jury."

[1] In this State it is well settled that while the evidence of an accomplice should be received and acted upon by a jury with great caution, the jury may, if they are satisfied of the guilt of the accused, convict him upon the uncorroborated testimony of such an accomplice. *Watkins* v. *Commonwealth*, 174 Va. 518, 526, 6 S. E. 2d 670, 673 (1940); *Lane* v. *Commonwealth*, 184 Va. 603, 611, 35 S. E. 2d 749, 752 (1945); *Wright* v. *Commonwealth*, 196 Va. 132, 138, 82 S. E. 2d 603, 607 (1954). However, in the present case, the birth of a child, which the prosecutrix attributed to her relations with her father, is corroborative of such relationship.

As has been said, the attorney for the Commonwealth called the defendant's wife as a witness for the prosecution and upon objection she was not permitted to testify. Although there was no motion by the defendant for a mistrial, he now argues on appeal that such mistrial should have been ordered.

[2] Code § 8-288, as amended [Repl. Vol. 1957], provides in part: "In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor, without the consent of the other, *allowed to be called* as a witness against the other, except in the case of a prosecution for an offense committed by one against the other or against a minor child of either * * * ." (Emphasis added.)

In *Wilson* v. *Commonwealth*, 157 Va. 962, 968, 162 S. E. 15, 16-17 (1932), we pointed out that this statute has placed upon the Commonwealth "the burden of first obtaining the consent of the accused husband before it will be allowed to call the wife as a witness against him;" that the evil sought to be corrected was the "intentional effort of the attorney for the Commonwealth to force the accused to object to the introduction of his wife as a witness against him, and thus, perhaps, have the jury place upon him the odium of seeking to prevent a fair investigation of the transaction." We further pointed out that when an accused is "of opinion that the wilful misconduct of the representative of the Commonwealth has prejudiced the jury against him," he should "immediately move the court to discharge the jury and grant him a new trial," and that unless he does so such incident is waived. 157 Va. at 970, 162 S. E. at 17.

In the present case the conduct of the attorney for the Commonwealth in calling the wife of the defendant to the stand was in plain violation of the statute and was ground for a mistrial. Indeed, in its oral opinion overruling the motion for a new trial, the trial court stated that it would have granted such a motion had it been made, but not having been made, the incident was waived and could not be raised after the unfavorable verdict by the jury. We agree with this ruling. *Wilson* v. *Commonwealth, supra,* 157 Va. at 970, 162 S. E. at 17.

[3] We do not agree with the contention that the trial court erred in admitting in evidence the testimony of the prosecutrix that her father had had sexual intercourse with her for several years prior to the incident of November 21, 1965.

"[I]t is well settled that in a prosecution for incest, evidence of acts of incestuous intercourse between the parties other than those charged in the indictment or information, whether prior or subsequent thereto, is, if not too remote in point of time, admissible for the purpose of throwing light upon the relations of the parties and

the incestuous disposition of the defendant toward the other party, and to corroborate the proof of the act relied upon for conviction." 27 Am. Jur. Incest § 15, pp. 296, 297. See also, 22A C. J. S. Criminal Law § 691(34), p. 881. "The fact that some of the other offenses were remote in point of time from the act under investigation does not of itself render such evidence incompetent, where the acts were repeatedly done up to a comparatively recent period and were all apparently inspired by one purpose." 29 Am. Jur. 2d Evidence § 330, p. 379.

Similarly, in *Herron* v. *Commonwealth*, 208 Va. 326, 327, 157 S. E. 2d 195, 196 (1967), we held that evidence of acts of sexual intercourse before the day specified in the indictment for statutory rape was admissible.

In the present case the testimony of the prosecutrix is that the relationship with her father began when she was twelve years of age and continued until the final incident on November 21, 1965. Thus, it showed the defendant's repeated incestuous purpose.

The testimony of the prosecutrix that she gave birth to a child was properly admitted in evidence as corroborative of her testimony of the incestuous conduct of the defendant. 42 C. J. S. Incest § 15-c, p. 514; *State* v. *Koch*, 75 W. Va. 648, 84 S. E. 510 (1915). Moreover, the defendant voluntarily testified as to the birth of the child.

The defendant next complains of the admission of testimony of the prosecutrix that he slapped her repeatedly and brutally on November 22, the day following the last incestuous act for which he was being prosecuted. The argument is that this was a separate offense and in no way related to the alleged incestuous act.

The trouble with this contention is that in his opening statement counsel for the defendant told the jury about the assault and later the defendant voluntarily took the stand and gave his version of the altercation and the alleged assault. Moreover, evidence of such cruel treatment was proper as showing his intimidation of the prosecutrix. 42 C. J. S. Incest § 15-b, p. 513; *Potts* v. *State*, 86 Ga. App. 779, 72 S. E. 2d 553, 556 (1952).

To support or corroborate his testimony that he and the prosecutrix were not together at the workshop between 1:00 and 3:00 P.M., as she testified, the defendant offered in evidence an invoice or charge ticket rendered by him to Camp Civitan which showed that his services there were completed at 3:30 P. M. He testified that this ticket was in his own handwriting, was written shortly after his work on

the job had been completed, and was a part of his "regular records" in the course of his business. On objection, the trial court excluded the ticket from the evidence and that ruling is the basis of one of the assignments of error.

It will be observed that since the defendant, who wrote the ticket, was a witness, we are not here concerned with the introduction of the business entry as an exception to the hearsay rule. There is considerable authority for the view that to warrant the introduction of a business entry, whether as an exception to the hearsay rule or otherwise, such entry must have been made as a part of a series of reports showing a regular course of business dealings and not as a record of a single isolated transaction. 30 Am. Jur. 2d Evidence § 937, p. 58; Annotation, 17 A. L. R. 2d § 5, p. 242; 32 C. J. S. Evidence § 685(1), p. 913. Under this view the ticket, being a record of a single isolated transaction, was not admissible in evidence.

On the other hand, according to Wigmore on Evidence, 3d Ed., Vol. III, § 737, p. 75, where, as here, no exception to the hearsay rule is involved, the limitations of the shopbook rule do not apply. Under this view the ticket was admissible in evidence.

It is not necessary that we here decide which view should be adopted. Assuming that the exclusion of the ticket from the evidence by the trial court was improper, such ruling was clearly harmless error. The defendant testified that he was at Camp Civitan and not at his workshop at the time of the alleged crime. The jury have rejected this testimony. There is no reason to believe that they would have believed him because the ticket supported this testimony.

[4] The final assignment of error is that the trial court erred in failing to grant a mistrial because of what the defendant says was the inflammatory argument of the attorney for the Commonwealth before the jury. Several of the incidents are detailed in the brief, but an examination of the record shows that in only one did counsel for the defendant object to the argument of which he now complains. In the absence of such objection in the lower court we will not consider the incidents now complained of. *Russo* v. *Commonwealth*, 207 Va. 251, 257, 148 S. E. 2d 820, 825 (1966).

The only part of the argument objected to by the defendant and the trial court's action thereon are thus recorded:

"[Mr. Piersall]: Gentlemen of the jury, I am sure you remember when he objected to almost every question I asked that young girl about the baby, about when this relationship started, about how

long the relationship lasted, about when it ended, and yet he would have the gall to stand up here and say to you that the Commonwealth has not done its duty, when he has objected to everything that we have tried to do today.

"Mr. Goldblatt: If Your Honor please, I ask you to advise the jury that when an objection was made and sustained by Your Honor, there was good and ample reason for it.

"Mr. Piersall: If it was sustained.

"Mr. Goldblatt: I will object again to improper testimony.

"The Court: Go ahead, Mr. Piersall. I don't think it requires any ruling of the court."

In the trial of a criminal case counsel for the defendant has the right to, and indeed should, object to questions which have the effect of introducing improper evidence before the jury. The argument of the attorney for the Commonwealth was improper insofar as it criticized proper objections made by counsel for the defendant. However, since counsel for the defendant made no motion for a mistrial on account of it, there was no duty on the trial court on its own motion to declare a mistrial.

The judgment is

*Affirmed.*