COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


DENNIS JAMES OWEN
                                    MEMORANDUM OPINION[*] BY
v.         Record No. 1448-97-3     JUDGE SAM W. COLEMAN III
                                         NOVEMBER 10, 1998
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                    William N. Alexander, II, Judge

              John S. Edwards for appellant.

              Richard B. Smith, Assistant Attorney General
              (Mark L. Earley, Attorney General, on brief),
              for appellee.



     Dennis James Owen was convicted by a jury of arson in

violation of Code § 18.2-77.  On appeal Owen contends:  (1) the

trial court should have disqualified the entire Pittsylvania

County Commonwealth's Attorney's Office because he had talked

with the Commonwealth's Attorney about the case before the

Commonwealth's Attorney was elected; (2) the facts used to obtain

the November 9, 1995 search warrant were stale and, therefore,

did not provide probable cause for issuance of the warrant;

(3) the trial court should have suppressed certain fruits of the

July 24, 1995 search because the investigators expanded the scope

of the search beyond Owen's consent; and (4) the trial court

should have granted a mistrial because the Commonwealth's expert

witness twice testified that the fire was deliberately set, after

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

being twice instructed by the court not to so testify. Because Owen is procedurally barred from appealing issues one and two, and because issues three and four lack merit, we affirm the conviction.

## I.  BACKGROUND

On March 9, 1991, Owen's home, outbuilding, and boat burned. As a result of the fire, Owen reported numerous items that had been destroyed during the fire or stolen at the time of the fire.

On July 24, 1995, investigators executed a search warrant for Owen's residence to search for items that Owen reported to have been stolen from his home on May 6, 1995. Although the warrant did not specify to search for firearms, during the search the investigators discovered a cache of firearms, several of which appeared to match rifles that Owen had reported missing after the fire. According to an investigator's testimony, when asked if the investigators could photograph and record serial numbers from the firearms, Owen consented. Owen told investigators that he had acquired the guns after the 1991 fire. However, after tracing the serial numbers investigators discovered that Owen had purchased four of the firearms prior to the 1991 fire. Based in part on this information, investigators obtained another search warrant, which they executed on November 9, 1995, during which they seized, among other things, two firearms that matched weapons Owen claimed to have lost in the 1991 fire.

Prior to trial, Owen made a motion to suppress the fruits of the July 24 search warrant claiming that the investigators expanded the search beyond the warrant's authority or his consent. Because the July 24 search produced the probable cause that led to the issuance of the November 9, 1995 search warrant, Owen also made a motion that the fruits of the subsequent search be suppressed. The trial court found, however, that Owen voluntarily consented to the scope of the July 24 search and denied the motion.

During trial, the Commonwealth's expert witness testified that there had been three "set" fires in 1991. The trial court ruled, in response to Owen's objection, that the expert could not testify by giving an opinion that the fire was intentionally or deliberately set. The trial court instructed the jury to disregard the witness' statement. Subsequently, the expert testified that "human action" caused the fire. Again the trial court sustained defense counsel's objection and admonished the jury to disregard the statement. The trial court denied Owen's motion for a mistrial.

After the jury found Owen guilty, he filed a motion to set aside the verdict and to dismiss the indictment, or, in the alternative, to order a new trial. Owen asked the court to reconsider its refusal to suppress the fruits of the November 9, 1995 search, assigning as a new and additional ground that the facts were stale because they were based on events that had

occurred 108 days earlier and, therefore, did not provide probable cause to believe the items were still there.  The trial court refused to reconsider the suppression issues, citing Owen's failure to argue the staleness issue before trial.

Also, in the motion to set aside, Owen asked for the first time that the trial court disqualify the Pittsylvania County Commonwealth's Attorney's Office from prosecuting the case based on an alleged conflict of interest and to dismiss the indictment. Owen presented evidence that shortly after the fire he had briefly met with David Grimes, explained to Grimes that his house had burned and that he was having trouble with his insurance company, that the insurance company and the sheriff's office were investigating him, and that he thought he needed a lawyer. Grimes concurred.  Owen made an appointment to follow up on the matter, but later retained other counsel and never met again with Grimes.  Grimes was later elected Commonwealth's Attorney for Pittsylvania County.  The trial court refused to disqualify the Commonwealth's Attorney or to dismiss the indictment, based in part on Owen's failure to raise the issue until after trial.

## II.  ANALYSIS

### A.  Conflict Of Interest

Owen contends that the trial court should have disqualified the entire Pittsylvania County Commonwealth's Attorney's Office because the limited contact between the Commonwealth's Attorney and Owen before trial created an attorney-client relationship and

therefore, a conflict of interest.  Although Owen knew of his claimed conflict before trial, he first presented the issue to the court six months after the jury returned its guilty verdict. As with a juror's misconduct or a judge's disqualifying bias, a party with prior knowledge of the facts he claims to constitute misconduct who proceeds to verdict without raising an objection will not thereafter be heard to complain about the matter.  <u>See</u> <u>Mason v. Commonwealth</u>, 219 Va. 1091, 1098, 254 S.E.2d 116, 120 (1979) (regarding disqualification of a judge); <u>Wilson v.</u> <u>Commonwealth</u>, 157 Va. 962, 970, 162 S.E. 15, 17 (1932) (regarding prosecutorial misconduct and referring to juror misconduct); <u>Tickel v. Commonwealth</u>, 11 Va. App. 558, 563-64, 400 S.E.2d 534, 537-38 (1991) (regarding prosecutorial misconduct).  The contemporaneous objection rule, Rule 5A:18, prevents our considering issues on appeal that were not "timely" raised in the trial court.  One purpose of the rule is to enable errors to be corrected at the time to avoid retrials.  A party does not make a contemporaneous objection in accordance with Rule 5A:18 where he complains for the first time in a motion to set aside a verdict that a prosecutor should have been disqualified.  To hold otherwise would permit -- indeed would encourage -- defendants to sit on their rights when error occurs and withhold it from the trial court's consideration only to raise the issue in the event of an adverse verdict.  We cannot condone such a practice. Because Owen did not assert a timely objection, he is barred from

raising the issue on appeal.  Rule 5A:18.

B. Suppression of Evidence: Staleness of Probable Cause

Investigators obtained the facts during the July 24, 1995 search that were the basis for the November 9, 1995 search. Thus, by the time the November 9, 1995 search was conducted, the facts were 108 days old. Owen contends those facts, which consisted of guns observed during the first search, were too stale to support probable cause.

Owen did not raise the staleness issue prior to trial. Again, he waited until six months after the verdict to raise the issue, even though he was aware of the situation before trial. The trial judge did not err in refusing to grant the post-trial motion. Code § 19.2-266.2 provides that motions to suppress evidence obtained in violation of the Fourth Amendment are to be made prior to trial. Regardless of whether the requirement is mandatory, a defendant must at least make a contemporaneous objection. The defendant cannot await the determination of an adverse verdict and then raise the issue to obtain a new trial.

C. Suppression of Evidence: Consent to Expand Search

The issue here is whether the officers conducting the search obtained Owen's voluntary and informed consent to photograph and record the serial numbers of guns that were observed during the July 24, 1995 search, when the guns were not designated in the search warrant. Whether Owen voluntarily consented "`is a question of fact to be determined from the totality of all the circumstances.'" Deer v. Commonwealth, 17 Va. App. 730, 735, 441

- 7 -

S.E.2d 33, 36 (1994) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).  On appeal the trial court's finding of voluntary consent must be accepted unless plainly wrong.  See Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989).

"[W]e review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  The evidence showed that Owen did not sign a consent to search form.  Nevertheless, the trial court found that the investigators told Owen that they had discovered the guns and asked his permission to inspect them.  The investigators informed Owen that he was not required to consent to their request.  Nonetheless, after seeking assurances that the guns would not leave the premises, Owen said "well go ahead" and thereby consented to the investigators' request.

Owen asks this Court to find, despite the trial court's ruling, that the totality of the circumstances coerced his "consent."  We decline to do so.  Owen's reliance on Bumper v. North Carolina, 391 U.S. 543 (1968), is misplaced.  In Bumper, officers obtained consent to search the premises by falsely claiming to have a warrant authorizing the search.  See Bumper 391 U.S. at 546-48.  In contrast, these investigators explained to Owen that the search warrant did not authorize them to expand the search to examine the guns and that he was not required to

consent to the expansion.  Owen argues, however, that the presence of numerous armed investigators "swarming all over his home" was inherently coercive.  The trial court was not persuaded that the circumstances of the search coerced the consent.  We cannot say that the trial court's ruling was wrong as a matter of law.  See e.g., United States v. Elie, 111 F.3d 1135, 1145 (4th Cir. 1997) (finding no coercive environment despite the presence of six armed officers who had earlier ordered defendant to the floor at gunpoint).  Furthermore, Owen's failure to sign a consent to search form does not render his oral consent involuntary.  See e.g. United States v. Lattimore, 87 F.3d 647, 651 (4th Cir. 1996) ("refusal to execute a written consent form subsequent to a voluntary oral consent does not act as an effective withdrawal of prior consent").

### D.  Mistrial:  Expert Witness Testimony

Owen argues that the trial court erred in refusing to grant a mistrial after the expert witness testified twice that the fire resulted from human action.

The Commonwealth concedes, and we concur, that the expert's testimony was inadmissible.  See Callahan v. Commonwealth, 8 Va. App. 135, 139, 379 S.E.2d 476, 478-79 (1989).  However, the trial judge promptly instructed the jury to disregard the statements.

"A trial court exercises its discretion when it determines whether it should grant a motion for a mistrial."  Beavers v. Commonwealth, 245 Va. 268, 280, 427 S.E.2d 411, 420 (1993).

"When a motion for a mistrial is made, based upon an allegedly prejudicial event, the trial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so `indelibly prejudiced' as to necessitate a new trial." Spencer v. Commonwealth, 240 Va. 78, 95, 393 S.E.2d 609, 619 (1990) (quoting LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983)). Because juries are presumed to follow prompt, explicit curative instructions, a judgment will not be reversed for the improper admission of evidence that a trial judge subsequently directs a jury to disregard unless a manifest probability exists that the evidence is so prejudicial that the fact finder could not disregard the evidence. See Beavers, 245 Va. at 280, 427 S.E.2d at 420. Here, the expert witness testified that the fire was "set." Although the testimony may have exceeded the permissible scope of the expert's opinion, the defendant concedes that the evidence shows that the fire was "set" and the only issue was whether the evidence proved that the defendant "set" the fire. The other evidence proved that the fire originated in three separate locations by the use of an accelerant, which tends to prove that the fire was set. The expert's testimony was not so prejudicial in nature that the jury could not disregard it. Accordingly, the trial judge did not abuse his discretion in denying the motion for a mistrial.

For the reasons stated, Owen's conviction is affirmed.

<u>Affirmed.</u>