## MEADOWS v. UNITED STATES.
### No. 6531.

United States Court of Appeals for the District of Columbia.

March 9, 1936.

ROBB, Associate Justice, dissenting.

Harry T. Whelan, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and H. L. Underwood and Louis L. Whitestone, Asst. U. S. Attys., all of Washington, D. C.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This case is an appeal from a judgment of conviction, in the Supreme Court of the District of Columbia, of murder in the second degree.. The question presented on the appeal is as to the correctness of the instructions given the jury.

The indictment was for murder in the first degree. The defendant's plea was not guilty, the theory thereof being self-defense. The testimony relied upon by the Government in support of its theory that the defendant was guilty of murder in the first degree was, briefly, to the effect that: The defendant on the night of March 5, 1935, had been at a poker gambling establishment at 320 Florida Avenue in the District of Columbia with one Willie Juanita Jordan, with whom, as his "common law" wife he had, at the place of abode of her mother, for some time been living. He had given Willie' Juanita Jordan five dollars with which to play poker, but she had not sat in the game. Upon leaving the poker establishment, he and Willie Juanita Jordan were proceeding together along Florida Avenue when he demanded of her the return of the five dollars· and tussled with her for the possession of her purse. During this altercation, Alfred Jordan, the deceased, a brother of the woman mentioned, appeared and with his fists knocked the defendant down. The latter, upon getting up and leaving the scene, said that "if he lived he would kill him [Alfred Jordan]." Thereafter the defendant went to the place where he had been living with Willie Juanita Jordan and her mother and obtained a bag containing some knives, and returned to about the place where the altercation described· had occurred. In the meantime Willie Juanita Jordan had gone back with her brother to 320 Florida Avenue and gotten her sister, one Ethel Tucker, and these three proceeded again along Florida Avenue to about the point of the altercation referred to. The defendant approached them with his bag in one hand and the other hand in his pocket. As he passed them he struck at Alfred Jordan with a knife. Ethel Tucker put up her hand to block off the blow and was cut on her finger. Then the defendant· seized the brother, Alfred Jordan, and stated that he would get him, and there was another tussle, and the defendant ducked and struck Alfred Jordan with the knife, himself falling. into a basement. As a result of the knife thrust, Alfred Jordan died.

On the other hand, the testimony relied upon by the defendant under his plea of self-defense was that: He was by occupation a railroad dining car chef and as such kept in his possession a grip containing the tools of his trade, to wit, a large butcher knife, a palette knife, a boning knife, and a meat fork. He had been living for some time with Willie Juanita Jordan at her mother's as above described, but on the afternoon of the day in question, he had determined to change his place of abode, and had moved most of his effects, but not his clothing and the grip of knives. After some drinking in the evening by the defendant and Willie Juanita Jordan and her sister, Ethel Tucker, at the abode of the mother, he and Willie Juanita Jordan and Ethel Tucker went to a cafeteria where they had beer and sandwiches and then to the gambling establishment above referred to, Ethel Tucker remaining there and the defendant and Willie Juanita Jordan leaving and proceeding along Florida Avenue as above stated. The tussle for the purse occurred and during it Alfred Jordan appeared on the scene and knocked the defendant down four or five times, the defendant ·being· hit on the shoulder, neck, and twice on the head. The defendant on getting up and leaving made no statement to the effect that he would kill Jordan. He went back to the place where he had been living to get the remainder of his personal belongings. Willie Juanita Jordan's mother noticed that he bore evidence of having been in a fight, wanted to know whether or not he had hurt Willie and refused to let him have his clothes. Thereupon he took his grip and a pair of shoes and left. He did not at that time open the grip or take out a knife. He started back towards 320 Florida Avenue to pay two dollars he owed there. As he left the house the mother of Willie and Alfred Jordan stated that if he had hurt Willie she would make Alfred

kill him. She followed him out of the house. He stopped at 124 Florida Avenue to get rid of her, but she continued to follow him. He then saw Willie Juanita Jordan, Ethel Tucker and Alfred Jordan, the latter walking in the middle. It was dark on the side where he was walking and he was upon them before he saw them. Having already been knocked down as above described, he was afraid of a beating and tried to walk around them. As he passed them, Alfred Jordan stepped out from between the two women and struck him on the right side of the head, knocked him down, and kicked him "in a delicate spot" five or six times while he was down. Ethel Tucker also kicked him in the face while he was down, causing his face to be skinned and his eye bruised. He tried to get loose and failed. The grip was still in his hand. He scrambled around, opened it and pulled out the first knife he found, which was the boning knife above described, and while on the ground raised up and struck at Jordan once, but he did not know what part of the body he struck. Alfred Jordan had been twisting the defendant's leg, but upon being struck with the knife, turned defendant's foot loose and the defendant was able to get up and run. After his arrest the defendant was himself taken to the hospital. There was evidence to the effect that he had been beaten up around the face and body and that he was kept in the infirmary for about twelve days where his face and his leg, which as said had been twisted by Alfred Jordan, were treated. Alfred Jordan was younger and stronger and heavier than the defendant; the latter was suffering from a shrapnel wound in the leg and had lung trouble from gas, both as a result of war service in France, and had been rated as fifty percent disabled by the Veterans Bureau. He was in fear of Alfred Jordan, having been told that Jordan had beaten Tucker (apparently Ethel Tucker's husband) and one Chapman before, and having been told that Jordan had fastened a white man [1] in an elevator and beaten him up. The defendant knew that Alfred Jordan and the others could whip him. The wound from the effects of which Jordan died was in the upper part of his right thigh.

Under familiar rules both of the parties to the cause were entitled to instructions covering their respective theories of the case, there being evidence to support each theory; and the defendant, therefore, was entitled to have an instruction upon the theory that the killing was done in self-defense, and the Government upon the theory that it was not. After properly explaining the case to the jury and instructing in the usual manner upon the presumption of innocence, the burden of proof, the definition of reasonable doubt, the definition of murder in the first degree, and of the included defenses of murder in the second degree and manslaughter, the court, in respect of self-defense, instructed the jury as follows:

"As I have indicated, the defendant has interposed a plea of 'not guilty.' This allows him the benefit of every doubt which naturally arises in your minds, within reason, upon a full and fair consideration of all the facts and circumstances shown in the proof. The defendant particularly relies upon what, in law, we call the plea of self-defense. With respect to that plea, you are told, as a matter of law, that if the accused did not provoke the assault, and had, at the time of the occurrence, reasonable ground to believe—and in good faith believed—that the deceased intended to take his life or to do him great bodily harm, the defendant was not obliged to retreat nor to consider whether he could safely retreat, but was entitled to stand his ground and meet any attack made upon him by the deceased, in such manner and with such force as, under all the circumstances he, at the moment, honestly believed and had reasonable grounds to believe was necessary to save his own life or to protect himself from serious bodily harm.

"As having a bearing upon this plea, you are told that both the accused and the decedent had equal rights to be in the street where this thing happened. You are further told that assault with bare fists only, does not of itself justify one, in repelling such assault, to resort to the use of a dangerous or deadly weapon, in a manner calculated to produce death or serious bodily harm. There must be something more than such an assault with fists. There must be the honest belief, on the part of the defendant, that death or serious bodily harm was imminent at the hands of the decedent.

"You are further told that the defense of self-defense is not available to one who

---

[1] All of those above mentioned were colored.

884

provokes the difficulty. It therefore becomes important for you, in giving consideration to this branch of the case, to consider and determine, from the evidence, who was the aggressor—the accused or the decedent.

* * * * * *

"The burden of proof, as I have said, is upon the Government. I have announced that the defendant relies upon the plea of self-defense. That defense relates to the situation as it honestly seemed to the defendant at the time he did the act complained of. No burden is placed upon the defendant to prove such defense. The burden, as I have indicated, rest[s] with the Government throughout, to satisfy you, beyond a reasonable doubt, that he is guilty of murder in the first degree, as charged in the indictment, or guilty of murder in the second degree, or guilty of manslaughter—the latter two being offenses in the law regarded as necessarily included within the greater offense.

"You may take the case. Deliberate upon it; and when you have reached your conclusions, you may return and state to the Court your findings, in the form of your verdict. That verdict will be 'guilty of murder in the first degree' or 'guilty of murder in the second degree' or 'guilty of manslaughter' or 'not guilty.'

"Are there any suggestions?

"Mr. Whelan. I was going to make this suggestion, your Honor, in view of some other cases: I think it would be well for your Honor to tell the jury that they can take into consideration the sizes and the physical make-up of the two parties, in the plea of self-defense.

"The Court. Yes.

"Mr. Whelan has asked me if you may take into account the difference in the physical size of the accused and of the deceased. That you are entitled to do. You have evidence upon it, and you should properly give weight to all of the facts and circumstances, including those which have been suggested by Mr. Whelan."

The error assigned and argued in defendant's brief concerns the second paragraph of the instructions. No objection or exception was taken to the charge as finally given. But the Government has made no objection to consideration of the assignment of error; and it is well settled that if a plain error vital to a defendant has been committed, there is power, notwithstanding absence of objection and exception, to notice and correct it on appeal. Wiborg v. United States, 163 U.S. 632, 658, 16 S. Ct. 1127, 41 L.Ed. 289; Crawford v. United States, 212 U.S. 183, 194, 29 S.Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392; Mahler v. Eby, 264 U.S. 32, 45, 44 S.Ct. 283, 68 L. Ed. 549; Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345. Rule 8 of the Revised Rules of the Supreme Court of the United States (286 U. S. 593, 598, 28 U.S.C.A. following section 354) and Rule IX of the Rules of Practice and Procedure * * * in Criminal Cases * * *, promulgated by the Supreme Court of the United States (292 U.S. 661, 664, 28 U.S.C.A. following section 723a) do not in our view affect this power.

The defendant raises no question as to the correctness of the abstract statement of the law of self-defense in the first paragraph, but makes the point with respect to the second that in saying to the jury: "You are further told that assault with bare fists only, does not of itself justify one, in repelling such assault, to resort to the use of a dangerous or deadly weapon, in a manner calculated to produce death or serious bodily harm," the court so singled out a particular aspect of the facts bearing upon the question of self-defense that the jury was likely to have been misled to the defendant's prejudice in respect of the defense of self-defense. It is, of course, familiar law that "to single out and declare the effect of certain facts without consideration of other modifying facts" will constitute prejudicial error. Weddel v. United States (C.C.A.) 213 F. 208, 210; Urban v. United States (C.C.A.) 46 F.(2d) 291, 293; Perovich v. United States, 205 U.S. 86, 92, 27 S.Ct. 456, 51 L.Ed. 722.

We are of the view that the instruction complained of was for such reason erroneous. It would have been proper for the court in respect of the question of self-defense to call to the attention of the jury those items of evidence which, if believed by the jury, supported the theory of the Government that the killing was not in self-defense, such, for example, as the evidence to the effect that: the defendant at the end of the first altercation had said that he would kill Jordan; he had the grip in one hand and his other hand in his pocket, and by inference the knife in it, as he approached the scene of the second altercation; he struck Jordan while both were standing; and the item, concerning which there was no dispute, that the assault by

Jordan was with bare fists only, this as bearing particularly upon the question whether the defendant honestly believed and had reasonable grounds to believe that he was in danger of death or serious bodily harm, and upon the further question whether the defendant under the circumstances used more force than he in good faith and reasonably believed was necessary to protect himself. The court did call to the attention of the jury the fact that the assault was with bare fists only, but it thus singled out an important item supporting the Government's theory. It is true that in the two sentences succeeding the portion of the instruction complained of, the court said: "There must be something more than such an assault with fists. There must be the honest belief, on the part of the defendant, that death or serious bodily harm was imminent at the hands of the decedent." And it is true that this contained the implication that under such circumstances, despite the use of bare fists only by Jordan, there might be lawful resort to a dangerous weapon by the defendant. But this implication arose only out of an abstract statement unaided by any substantial mention or enumeration of the various items of testimony which, if believed by the jury, supported the defendant's theory, that is, those items bearing upon the defendant's asserted honest belief and reasonable basis for believing that the use of a knife was necessary to protect him from death or from serious bodily harm, such items, for example, as that: the defendant had already been knocked down several times in the first altercation with Jordan; in the second altercation, after being knocked down again, he was kicked "in a delicate spot" five or six times by Jordan and kicked also by Ethel Tucker; he tried to get loose and failed, his leg being twisted by the deceased; while still on the ground he opened his grip and pulled out the first knife he found and struck Jordan once; Jordan was younger, stronger and heavier than the defendant; the defendant was suffering from previous injuries; the defendant knew that Jordan had beaten up others and knew or believed that Jordan and his sisters could whip him; also as aiding the defendant's theory, the position of the wound in Jordan's body, that is to say, in the upper part of the thigh, a likely place if the blow was struck while the defendant was on the ground, an unlikely place if, according to the Government's theory, the defendant was standing up.

It is true that in response to the request of defendant's counsel, the trial judge did bring to the attention of the jury the difference in the size of the defendant and Jordan, and did say that the jury should give weight to all of the facts and circumstances, including the physical size and make-up of the defendant and Jordan. But we think this not sufficient to bring to the attention of the jury the various items which the defendant had a right to have the jury consider as bearing upon his defense of self-defense. If these items had been called to the attention of the jury and if the jury had believed them, it might well have found the defendant not guilty.

We think that the instructions, within the language of Weddel v. United States, supra, so singled out and declared the effect of a certain fact without consideration of other modifying facts as to constitute prejudicial error. Accordingly, the case is

Reversed and remanded for a new trial.

ROBB, Associate Justice (dissenting):

There has been an alarming increase in the number of murders committed in the District in recent years. Anyone who reads local newspapers will have observed that there has been an equal increase in other crimes of a serious nature, particularly armed robbery. Indeed, conditions are such that no part of the city is safe for persons afoot, especially after dark. To meet the situation, indicted persons should be speedily brought to trial and, if properly convicted, punished without delay.

In the present case the evidence of defendant's guilt is overwhelming. In my view the charge of the court, taken as a whole, is not subject to criticism. It is conceded in the majority opinion, as indeed it must be, that the words,

"There must be something more than such an assault with the fists. There must be the honest belief, on the part of the defendant, that death or serious bodily harm was imminent at the hands of the decedent,"

"contained the implication that under such circumstances, despite the use of bare fists only by Jordan, there might be lawful resort to a dangerous weapon by the defendant." "But," it is said, "this implication arose only out of an abstract statement * * *."

At the close of the charge, the court inquired, "Are there any suggestions?" In response counsel for the defendant said: "I was going to make this suggestion, your Honor, in view of some other cases: I think it would be well for your Honor to tell the jury that they can take into consideration the sizes and the physical make-up of the two parties, in the plea of self-defense." To this the court responded, addressing the jury: "Mr. Whelan has asked me if you may take into account the difference in the physical size of the accused and of the deceased. That you are entitled to do. You have evidence upon it, and *you should properly give weight to all of the facts and circumstances, including those which have been suggested by Mr. Whelan."* (Italics supplied.)

No other suggestion was made by counsel, nor was there any objection or exception to the court's charge.

While it is true that appellate courts in certain unusual circumstances, not here present, have noticed serious error, even though there was no objection, exception, or assignment. (Freed v. United States, 49 App.D.C. 392, 266 F. 1012), the general rule (recognized by the Supreme Court [2]) is to the contrary. Miller v. United States, 57 App.D.C. 228, 19 F.(2d) 702; Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, 20 Ann. Cas. 1138; Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann.Cas. 778.

Prior to the trial of this defendant the Supreme Court of the United States promulgated rules governing proceedings in criminal cases after plea of guilty or verdict or finding of guilty, which as to such proceedings superseded pre-existing rules of all lower Federal courts.[3] Rule IX thereof provides that "bills of exceptions shall conform to the provisions of rule 8" of its general rules. Rule 8 (28 U.S.C.A. following section 354) provides that judges of district courts (including the Supreme Court of the District) shall not allow a bill of exceptions "on a general exception to the charge of the court to the jury in trials at common law. The party excepting shall be required before the jury retires to state distinctly the several matters of law in such charge to which he excepts; and no other exception to the charge shall be allowed by the court or inserted in a bill of exceptions. (2) Only so much of the evidence shall be embraced in a bill of exceptions as may be necessary to present clearly the questions of law involved in the rulings to which exceptions are reserved. * * *."

In the Allis Case (in which Allis was sentenced to five years in the penitentiary) the court said (155 U.S. 117, at page 122, 15 S.Ct. 36, 38, 39 L.Ed. 91): "But the exception taken is not sufficient to bring all these matters before us. There is no intimation in the exception that the defendant at the time thought that the court was trying to coerce the jury or suggested that its language might have such an influence upon them. Evidently the claim of coercion is an afterthought from subsequent study of the record. But it is settled that no such afterthought justifies a reviewing court in reversing the judgment. A party must make every reasonable effort to secure from the trial court correct rulings, or such at least as are satisfactory to him, before he will be permitted to ask any review by the appellate tribunal; and to that end he must be distinct and specific in his objections and exceptions."

In the present case defendant merely noted an exception to the refusal of the court to grant a tendered prayer. Since the substance of that prayer was given in the charge of the court that followed, the denial of the prayer was not assigned as error. Thus, an abandoned exception is used as a vehicle to bring up evidence to support an assignment of error not covered by an exception. Without the abandoned exception there would be no bill of exceptions, and the evidence and charge upon which the majority predicate error would not be part of a true bill of exceptions, being in violation of Rule IX of the criminal rules of the Supreme Court of the United States.

Defendant's contention, as in the Allis Case, is an afterthought, and in noticing it this court violates Rule IX of the criminal rules of the Supreme Court of the United States and reverses a judgment that should be affirmed. Laxity of courts in enforcing their rules (which have the force of

[2] Rule IX, Rules of Practice and Procedure in Criminal Cases, 292 U.S. 661, 664, 28 U.S.C.A. following section 723a.

[3] Rules of Practice and Procedure in Criminal Cases, 292 U.S. 661, 28 U.S.C.A. § 723a, and rules following section 723c.

law), or the making of exceptions thereto, fosters attempts by attorneys to disregard or circumvent them, as here, and lessens respect for law and its enforcement.