## HILLIARD v. UNITED STATES.
### No. 4789.

Circuit Court of Appeals, Fourth Circuit.
July 21, 1941.

John W. Carter, Jr., of Danville, Va., and T. W. Messick, of Roanoke, Va. (M. M. Kreindler, of New York City, and Waldo G. Miles, of Danville, Va., on the brief), for appellant.

F. S. Tavenner, Jr., U. S. Atty., of Woodstock, Va., and Howard C. Gilmer, Jr., Asst. U. S. Atty., of Pulaski, Va. (R. Roy Rush, Asst. U. S. Atty., of Roanoke, Va., on the brief), for appellee.

Before SOPER, DOBIE, and NORTH-COTT, Circuit Judges.

SOPER, Circuit Judge.

Hughes Robert Hilliard, the appellant in this case, was defendant in the District Court and was convicted and sentenced to serve a term of ten years in the penitentiary and to pay a fine of $10,000, under an indictment which charged that in violation of 18 U.S.C.A. § 400, he induced and coerced Stella Vaughan, a girl under the age of eighteen years, to go from Bristol, Virginia, to New York City to engage in prostitution. The girl testified in substance as follows: In May, 1939, she and an older sister met Hilliard at Bristol and Marion, Virginia, where they were operating a concession at a traveling carnival. He visited the carnival several times and asked Stella Vaughan to go to New York to work in a restaurant which he owned, picturing a life of easy work and plenty of money, with freedom to return to Virginia at will. She had had some domestic difficulties, and, on this account, did not wish to return to her home at Wytheville, Virginia. Instead she went to Bristol and took a room in a hotel, where she was joined by Hilliard who forced her to go to his room and spend the night with him. The next morning she secured some of her clothing from her room, put it in his bag and left Bristol for New York in his automobile. They passed through Wytheville and stopped at Roanoke. There he gave her twenty dollars to buy clothing, and she went shopping alone, and waited for him in one shop from 3 to 9:30 P. M. That night they spent in a tourist cabin. The next day he took her to Lynchburg, where he telehoned the Cadillac Hotel in New York, and told two girls, "Inez" and "Bobby", to meet her at the railroad station in New York. He gave her a railroad ticket and put her on the New York train. On the way she spent two hours alone in Washington. She was met in New York by two girls named Bobby Jenson and Inez Kelly Hilliard, the defendant's wife. They explained that she would have to lead a life of prostitution or starve, and took her to the Cadillac Hotel where, on the following day and the next two weeks, she was so engaged. She then became sick. Hilliard, who in the meantime had reached New York, took her to a doctor and then to his apartment. After an interval of two weeks she was taken back to the hotel and resumed the practice of prostitution. During all of this time she was coerced by the defendant, acting in concert with the other girls, and turned over all of her earnings to him. Finally in September, after he had struck her with a shoe for leaving the hotel alone, she escaped with the assistance of an elevator boy, and returned to her home in Virginia using for the purpose some money he had given her to pay her room rent.

Certain portions of this story were corroborated. It was shown by other witnesses that Hilliard met the girl at Bristol and Marion; that they were both registered at the hotel in Bristol on the same night; that he was in Roanoke while she was shopping; that she went to New York and stopped at the Cadillac Hotel and also at his apartment, and that she was treated by a physician for a venereal disease. In summary, it may be said that while there was abundant evidence to support the charge that Hilliard induced the girl to go to New York for immoral purposes, there was little ground for believing that she was forced into a life of prostitution. When she was fifteen, she ran away from home and married, but separated from her husband after the ceremony and the marriage was annulled. She admitted that on one occasion

prior to her stay in New York she had had a sexual experience.

On behalf of the defendant, his wife testified that she first saw the girl when the latter came to the wife's room at the Cadillac Hotel and said that she had hitchhiked to New York to secure medical treatment and to see the Fair, and that Hilliard had told her to look up his wife. The doctor who treated the girl in New York was called as a government witness and testified on cross examination that he first saw her on May 17, 1938, three days after her arrival in New York, and that she had then been infected with gonorrhea for at least two weeks.

It is not claimed that the evidence was insufficient to take the case to the jury, but certain rulings of the District Judge, excepted to by the defendant during the trial, require this summary of the evidence. Specifically, it is contended that errors were made in regard to the admissibility of evidence, and that the conduct of the prosecuting attorney was so improper and prejudicial to the defendant as to require that the judgment be reversed and a new trial granted in the interests of justice. We consider these exceptions in the order in which they have been urged upon us.

First, it is contended that the defendant, who did not desire to take the witness stand, was compelled to testify against himself by the District Attorney in the following fashion: During the cross examination of Stella Vaughan it was brought out that during the period when, according to her testimony, she was held in the Cadillac Hotel in New York by force, she had written certain letters to her mother and a sister at Wytheville, telling them that she was living at the Cadillac Hotel and wanted to come home; but she received no answer to her letters, and therefore thought that they did not go out of the hotel. Thereupon the District Attorney interrupted the examination and said: "I want to call for the production of those letters if you have them. I ask if they have the letters that they produce them in court. I am not saying counsel has them. I am including the defendant".

One of appellant's counsel replied: "I ask that the District Attorney produce the letters if he has them".

Whereupon, the United States Attorney said: "I don't have them".

No objection to the incident was made at the time, but later during the cross ex-amination of the witness the defendant on this account moved for a mistrial and it was overruled. The District Judge made it clear to the jury by the following statement that there was no evidence that either side was in possession of the letters in question. The judge said: "Gentlemen of the Jury, there was some mention made of letters which the witness wrote home. I will say to the jury the demand of the District Attorney on the defendant and the demand on the District Attorney by the defendant—you gentlemen are not to draw any inference that either the Government or the defendant or both, had the letters, or the other. Each side requested the other to produce them and they said they didn't have them and you are not to draw any inference that either side ever had them."

■■ The mere recital of the circumstances sufficiently shows that the defendant suffered thereby no deprivation of his constitutional rights and no embarrassment in his defense. It is true that the prosecuting attorney may not, in the presence of the jury, demand that the defendant produce an incriminating document. See Powell v. Commonwealth, 167 Va. 558, 189 S.E. 433; 110 A.L.R. 90, 101 note; and the rule was applied, for example, in the leading case of McKnight v. United States, 6 Cir., 115 F. 972, where a copy of an incriminating document was put in evidence by the District Attorney accompanied by a demand that the defendant produce the original, and it was held that such action was a violation of the immunity secured to the defendant by the Fifth Amendment to the Constitution. So, in the pending case, the possession of the letters by the defendant would have been weighty testimony against him, indicating that he had intercepted the letters in order to conceal the girl's whereabouts from her family; but the jury was not allowed to entertain any incriminating inference in this respect, for as soon as objection was made, the jury was promptly told by the judge that there was nothing to show that the defendant ever had the letters. The incident was closed without exerting any compulsion upon the defendant, and without prejudice to his case. See Bain v. United States, 6 Cir., 262 F. 664.

■■ The next point relates to the essential element of the government's case under the statute that the girl was under 18 years in the spring of 1939, when it was

charged the offense was committed. To establish this fact the government offered a certified copy of the birth certificate showing that Stella May Vaughan (the full name of the prosecuting witness), was born on November 23, 1922, at Wytheville, Virginia, to Walter Frank Vaughan and Ella May Vaughan. The document was certified by the local Registrar of Vital Statistics. A Virginia statute, Code 1936, § 1580, makes such a copy admissible in evidence in the courts of the State. The defendant objected to the certificate at the trial on the ground that it was not authenticated in the manner required by 28 U.S. C.A. § 688, but now concedes that this statute is not applicable. The objection now is that the State statute has no application to a criminal trial in the federal court, and that at common law the certificate of a public officer is inadequate to prove a disputed fact. It is also contended that there was no evidence to show the identity of the prosecuting witness with the person named in the certificate. The extremely trivial character of this point, and indeed of the whole objection, is shown by the evidence of Ella Vaughan, the girl's mother, who testified to the name of the child and the date of birth which tallied with the entries of the certificate. We are satisfied, moreover, that the copy was admissible in evidence as the copy of a public record, duly certified by a public officer whose duty it was to copy the original. Breitmayer v. United States, 6 Cir., 249 F. 929; 5 Wigmore on Evidence, 3d Ed., § 1677; United States v. Percheman, 7 Pet. 51, 8 L.Ed. 604; Meehan v. Forsyth, 65 U.S. 175, 176, 16 L. Ed. 730; 2 Wharton Crim. Evidence, 10th Ed., § 527c. Indeed, it is sufficient to say that the contention is without merit, because the reason now urged against the admissibility of the certificate was not advanced in the trial court.

The defendant also contends that the opening statement of the United States Attorney was improper in that it contained a recital of certain inadmissible and prejudicial evidence which the prosecutor intended to offer to the jury. Insofar as this evidence, when later offered and objected to, forms the foundation of exceptions to rulings of the court discussed in this opinion, nothing further need now be said. The United States Attorney in fact offered testimony which corresponded in nearly all respects with his introductory statement, and insofar as the testimony was

lacking to support the statement, there was no error in the ruling of the court, for when the defendant objected at the close of the opening statement to certain remarks therein contained, the District Judge instructed the jury that the statements of counsel for the United States and the defendant were not evidence, but merely recitals of what counsel expected to prove, and that the jury was to try the case on the evidence actually introduced.

Special emphasis is placed by the defendant upon the conduct of the United States Attorney in the closing argument when in response to a challenge of his opponent he made a statement which amounted to the giving of testimony on his part in support of the prosecution. The girl had testified to overhearing a long distance telephone conversation from Lynchburg to New York on May 14, 1939, in which the defendant told two other girls to meet her at the railroad station in New York. No records of the Telephone Company corroborative of this call were produced, and the absence of the records was not explained. Counsel for the defendant in his closing argument contended that it would have been a simple matter to have produced the records, and that the failure to do so indicated that the girl was not sent by the defendant to New York by railroad, as the government charged, but hitchhiked her own way, as the defendant claimed. During this argument the defendant said: "I am going to ask the District Attorney, when he gets up to talk to you, to tell you why such evidence was not produced to you. And I challenge the District Attorney to explain this to you gentlemen. * * If she got up to New York that way, irrespective of what happened up there, this defendant must be acquitted and perhaps that explains the reason why there has been no actual proof this telephone call was made from the railroad station to the Cadillac Hotel on that day."

In response to this challenge the District Attorney in his closing argument said: "I don't want to do counsel an injustice and I don't think he wants to do me an injustice, but the inference was that I knew there was no telephone call placed from there and I deliberately refused to put on any testimony in regard to it, and I was challenged to make an explanation to you as to why the government, which has been diligent in some respects was so careless in other. Now, Gentlemen of the Jury, to

answer that challenge, I state to the gentlemen that on May 23, 1940, within ten days after this matter was reported to Investigator Cash, Miss N. E. Frasier, Special Representative of the Chesapeake & Potomac Telephone Company, was interviewed and it was found that in the C. & P. Telephone System that the tickets for more than six months in arrears in public telephones were destroyed. And, therefore, Gentlemen of the Jury, there was no possibility of establishing that fact."

▉ In the midst of this statement counsel for the defendant interrupted and asked the court to forbid the District Attorney from citing anything outside of the record, but because of the challenge of the defendant's attorney, the court permitted the District Attorney to proceed. There was no error in this ruling. Doubtless it would have been better practice to have accounted for the absence of the telephone records during the taking of the evidence, and failing this, to have asked the court, when challenged at the last moment by defendant's attorney, for permission to reopen the case and supply the omission. It is especially incumbent upon a prosecuting attorney to observe scrupulously the rules of law in the discharge of his obligation to be fair to the defendant; Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314; but nothing can be said in commendation of the attempt of the defense to put the prosecution at a disadvantage without warning at the last moment rather than to learn the true facts in due season. The process of the court to secure the production of the records of the Telephone Company was easily available to the defense if the view was actually held, that they were existent and would break down the story of the prosecutrix. Under such circumstances, it is obvious that the defendant suffered no prejudice from the ruling of the trial judge. See Baker v. United States, 8 Cir., 115 F.2d 533, 544; Rice v. United States, 2 Cir., 35 F.2d 689; Comeriato v. United States, 4 Cir., 58 F.2d 557; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239, 60 S.Ct. 811, 84 L.Ed. 1129.

▉ Exception was taken to the admission of the testimony of Stella Vaughan and of her mother as to conversations which they had with Inez Kelly and Bobby Jenson at Wytheville, after Stella Vaughan had left New York and returned to her home. A few weeks after her return Inez Kelly came from New York to visit her and asked if any person or detective had been to see her, and told her to say nothing about her visit to New York. Shortly thereafter in succession came Bobby Jenson and Lorna Meredith with the same message. Two or three weeks later, Hilliard himself came, using the name of Johnson, and made the same inquiry and gave the same caution. There was no impropriety in receiving the testimony of the women under these circumstances. It tended to show co-operation between Hilliard and the other girls, and therefore to corroborate the testimony of the prosecuting witness, and it also tended to show Hilliard's anxiety lest some investigation would lead to a prosecution. See Madden v. United States, 9 Cir., 20 F.2d 289, 294; DiCarlo v. United States, 2 Cir., 6 F.2d 364, 368; Hodgskin v. United States, 2 Cir., 279 F. 85, 93; Vause v. United States, 2 Cir., 53 F.2d 346, 354; Carnahan v. United States, 8 Cir., 35 F.2d 96, 101, 67 A.L.R. 1035.

▉▉ Error is also claimed because the United States was allowed to show over objection that Hilliard had been arrested on prior occasions. For some reason not clear upon the record, Hilliard was arrested in Roanoke on May 13, 1939, when traveling in a maroon Buick automobile, and was taken to the police headquarters where his baggage was examined and found to contain women's clothes mingled with his own. The testimony corroborated that of Stella Vaughan who similarly described the car in which she and the defendant rode, and her additional testimony that she waited for him five or six hours in a store in Roanoke on the same day. While evidence of arrest for a crime not covered by the indictment is not ordinarily admissible against the defendant, it may become admissible if it tends to prove a fact that is relevant to the crime charged in the indictment; and there is no error in admitting the testimony, unless it manifestly appears that it has no legitimate bearing upon the question at issue and is calculated to prejudice the accused in the minds of the jurors. Moore v. United States, 150 U.S. 57, 14 S. Ct. 26, 37 L.Ed. 996; United States v. Glasser, 7 Cir., 116 F.2d 690, 703; Mehan v. United States, 8 Cir., 112 F.2d 561, 563; Fall v. United States, 60 App.D.C. 124, 49 F.2d 506, 512; Howe v. United States, 61 App.D.C. 8, 56 F.2d 305.

998

■ It was also proved that Hilliard was arrested on September 8, 1939, by the agents of the Federal Bureau of Investigation, and that he signed a card containing his finger prints after he had been taken into custody. This signature was introduced in evidence for the purpose of comparison with the signature on the registration card produced by the hotel in Roanoke where Hilliard and the girl spent the night of May 13, 1939, according to her testimony. When the registration card was offered, defendant's counsel objected unless proof was offered to identify the signature as that of Hilliard. To accomplish this purpose, an expert in handwriting was called by the United States and was shown the signature made by Hilliard at the time of his arrest on September 8, 1939, and also his signature at the time of his arrest on January 24, 1941, when he was taken into custody on the charge in the pending case. The material for comparison with the signature on the registration card was quite meager, and the signature made at the time of the arrest on September 8, 1939, was needed for this purpose. For the reasons already stated, there was no error in this ruling.

■ The defendant also objected to the testimony of the Federal Bureau of Investigation's agent Cash, who was called as a witness by the defendant and cross examined by the United States. For some reason the defense brought out the fact that the attention of the agent was first called to the case on trial on April 10, 1940, when he talked to a member of the State police and received information which led him to visit Stella Vaughan and take her statement. He was asked to say that prior to this occasion the F. B. I. knew nothing of the charge. On cross examination it was brought out that he later found a previous file relating to Hilliard in the Richmond office of the Bureau, which contained a reference to Dorothy Moore, a name used by Stella Vaughan in New York. The agent said during the cross examination that the Richmond file contained reports regarding the transportation by Hilliard of other women, and this answer was objected to. This statement was not asked for by the government but was voluntarily offered by the witness, and the court promptly told the jury to disregard what the witness had said with reference to any record except that which related to Stella Vaughan. There was no error in the ruling.

■ Special emphasis was placed by the defendant upon an alleged error in the ruling of the court that occurred during the examination of Dr. Milton Berger, a New York physician, called as a witness for the United States. He testified as to his acquaintance with the defendant and with Inez Kelly, Bobby Jenson and Lorna Meredith, associates of Stella Vaughan during her stay in New York. He testified also that he had treated her for gonorrhea on May 17, 18 and 20, 1939, and that in his opinion, contrary to her testimony, she had been infected by the disease for two weeks before he first examined her, or in other words, that her infection antedated her arrival in New York. The government sought to establish through him that the three other girls named were also engaged in prostitution. He testified that he had known each of them from one and a half to two years, and that he had seen them on frequent occasions; that he had treated Lorna Meredith as a hospital patient for two weeks; that Inez Kelly had brought Stella Vaughan to him for treatment, and had come to see him in regard to the case after Hilliard's arrest. He further testified that the treatment that he gave Stella Vaughan was the same which he customarily gave other prostitutes who came to him as patients, but that he did not want it to be understood that his practice was confined to prostitutes. He said that Inez Kelly had been operated on and had suffered from pains induced by sexual intercourse, and was given the same treatment as Stella Vaughan. He gave similar testimony in regard to Bobby Jenson. During the course of his examination he was asked if these girls were engaged in prostitution, and over objection said that he did not know definitely, and then volunteered the opinion that they were so engaged. Thereupon, the court directed the jury to disregard the opinion of the witness as incompetent. At the end of the examination the defendant moved for a mistrial on the ground that the District Attorney had deliberately elicited an opinion from the witness by cross examination, as if the witness, contrary to the actual fact, was hostile. The motion was overruled by the judge and, in our opinion, there was no error in the ruling. The testimony of the physician, upon which the defendant heavily relied to support his theory of the case, tended strongly to show that all of the girls mentioned by Stella Vaughan as her associates in New York were themselves pros-

titutes; and it was relevant and proper for the government to bring out this fact in corroboration of her testimony. If the jury believed the facts related by the physician, irrespective of his opinion, they could have had no doubt as to the occupation of the girls, and, as we have seen, the judge promptly instructed the jury to disregard the expression of opinion.

The judge was in error, however, in admitting over the defendant's objection the testimony of a colored maid employed at the hotel in New York, to the effect that Inez Kelly and Bobby Jenson both told her that they were engaged in prostitution in the employment of the defendant. It was relevant and proper to show, as the maid testified, that these girls had rooms in the same hotel as Stella Vaughan, and were her associates at the time; but it was a clear breach of the hearsay rule to permit her to tell what they said as to their occupation, and their association with the defendant. The government seeks to support this ruling on the theory that the evidence tended to show a conspiracy or concert of action between the defendant and the other girls, and therefore, although conspiracy was not charged in the indictment, the statements of the participants in the crime were competent evidence to prove the substantive offense. Reference is made to Lee Dip v. United States, 9 Cir., 92 F.2d 802, 803; Cossack v. United States, 9 Cir., 82 F.2d 214; Sprinkle v. United States, 4 Cir., 141 F. 811; but, in our view, these cases do not support the contention. They merely show that when several persons are jointly indicted for the commission of a crime and it is proved that they acted in concert to accomplish their end, evidence of declarations as well as acts of each in furtherance of the criminal design is admissible against all, even though conspiracy is not formally charged. The evidence of the maid in the pending case, however, indicates that the declarations of the girls objected to were merely casual descriptions of their occupation and the defendant's participation therein, and were not made in the course of the commission of the crime in order to promote or further its accomplishment. The declarations, therefore, were not saved from the hearsay rule by the principle of the cited cases.

This error in the ruling of the court, however, was not in our opinion prejudicial to the defendant. No one can read the entire evidence in this case and harbor any reasonable doubt as to the occupation of these women. It is true that Inez Kelly was later produced as a witness by the defendant and said that she had married the defendant on November 22, 1939, after Stella Vaughan returned home, and that she was not engaged in prostitution prior to her marriage; but her intimate association with Stella Vaughan, an acknowledged prostitute, in New York and elsewhere, the history of her (Inez Kelly's) physical condition, as shown by the physician, her subsequent attempts, not denied, to close the mouth of the prosecuting witness, and other facts outlined in this opinion indicate all too clearly the nature of her occupation. While we do not approve of the introduction of this hearsay testimony at the instance of the prosecution, the error was not prejudicial and a new trial of the defendant in the interests of justice is not required in view of the actualities of the situation. See 28 U.S.C.A. § 391.

There is no merit in the claim that the defendant's rights were infringed by calling Inez Kelly, the defendant's wife, into the court room from time to time during the trial for purposes of identification. Her marriage to the defendant was not known to the prosecution until it was intimated during the examination of the mother of Stella Vaughan, late in the government's case, and was subsequently verified by Inez Kelly when she took the stand in the defendant's behalf; and, in any event, the government was clearly within its rights in exhibiting her in the court room for purposes of identification during the taking of the testimony. She was not called as a witness or compelled to testify for or against her husband. See Wilson v. Commonwealth, 157 Va. 962, 162 S.E. 15.

Finally, objection was made to the refusal of the court to grant certain instructions to the jury prayed by the defendant. The charge of the judge fairly and correctly presented to the jury the essential elements of the offense, and instructed the jury that unless they found these elements established by the evidence beyond a reasonable doubt, the defendant should be acquitted. The jury were also told that the character of Stella Vaughan prior to her trip to New York had no bearing on the case if the elements of the crime were established, except insofar as her previous character might affect her credibility as a witness; and that if a witness had sworn

falsely as to one material fact, that circumstance might be taken into consideration in weighing the rest of his testimony.

The jury were also instructed that the defendant was not obliged to take the witness stand on his own behalf and that no inference of guilt could be drawn from his failure to do so.

 The defendant complains that the jury were not expressly told that they should scrutinize the testimony of Stella Vaughan with care and caution. It would have been well to have given an instruction in these very words; but there was no prejudicial error, for the bearing of the witness' manner of life on her credibility was specifically called to the jury's attention, so that they were not without warning in this respect. This ruling is not inconsistent with Speiller v. United States, 3 Cir., 31 F.2d 682, on which defendant relies.

 The defense also contends that the instruction as to the defendant's failure to take the stand did not accord with his offered instruction which was framed in the exact language approved in Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257. We think, however, that the charge as given was sufficiently clear on this point, and was in harmony with the ruling in the cited case.

 The defendant also objects that the court failed to give an instruction offered by him in which reference was made to the testimony of certain witnesses as to statements of Stella Vaughan that her purpose in going to New York was to secure medical attention or to see the Fair. It is insisted that the defendant was entitled to have an explicit instruction on this point so that his theory of the facts of the case should be clearly set before the jury. The judge did not attempt to summarize the evidence on either side, as he might well have done under the established and preferred practice in the federal courts. He restricted himself to a statement of the general rules of law applicable to the trial of criminal cases and the specific rules applicable to the offense charged. He might well have granted the instructions, setting out the facts asked by the defendant, but as he did not summarize the facts on either side, and the facts were not numerous or complicated, no injury was done to the defendant by the method pursued. The facts were fully argued to the jury under the instructions of the court, and the judge fully and fair-

ly covered the law of the case. See Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257; Meadows v. United States, 65 App.D.C. 275, 82 F.2d 881; McAffee v. United States, 70 App.D.C. 142, 105 F.2d 21; Little v. United States, 10 Cir., 73 F.2d 861, 867, 96 A.L.R. 889; Shidler v. United States, 9 Cir., 257 F. 620, 624; Vandalia R. Co. v. United States, 7 Cir., 226 F. 713, 718; Anderson v. United States, 9 Cir., 273 F. 677, 679; Coffin v. United States, 162 U.S. 664, 667, 16 S.Ct. 943, 40 L.Ed. 1109.

Affirmed.